

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN M. DONNELLY (d/b/a Catwalk Productions, d/b/a Catwalk Records), An Individual, )))) | **08CV1256** |
| Plaintiff, )) | **JUDGE NORGLE** |
| v. )) | **MAG. JUDGE ASHMAN** |
| WOLF RECORDS, HANNES FOLTERBAUER and JOANNE LARSON, )))) | *D)* |
| co-Defendants. )) | **F I L E D** |

MAR – 3 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Plaintiff KEVIN M. DONNELLY, by and through his counsel Andresen & Associates, P.C., complains against co-Defendants WOLF RECORDS, HANNES FOLTERBAUER and JOANNE LARSON and states as follows:

### The Parties

1.    Plaintiff KEVIN M. DONNELLY ("Donnelly") is an individual residing in the Northern District of Illinois. Donnelly has conducted business under the assumed/fictitious names of "Catwalk Productions" and "Catwalk Records" at one time or another.

2.    Co-Defendant WOLF RECORDS ("Wolf Records") is, upon information and belief, an Austrian record label based in Vienna. Wolf Records has, upon information and belief, conducted business under the assumed/fictitious name of "Wolf Records USA" at one time or another.

3.    Co-Defendant HANNES FOLTERBAUER ("Folterbauer") is, upon information and belief, an Austrian national and an executive officer and/or the ultimate decision maker for co-Defendant Wolf Records.

4.    Co-Defendant JOANNE LARSON ("Larson") is an individual residing in the Northern District of Illinois and, upon information or belief, has at one time or another (i) undertaken activities relevant to this Complaint on her own behalf, (ii) undertaken activities relevant to this Complaint as a officer, representative, intermediary and/or agent of co-Defendant Wolf Records, and/or (iii) conducted business under the assumed/fictitious name of "Wolf Records USA."

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the Copyright Act of 1976, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a).

6.    Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b)(3) and 1400(a) as co-Defendant Larson is a resident of this district, co-Defendant Wolf Records has continuous and systematic business contacts within this district, and, as regards co-Defendants Wolf Records and Folterbauer, there is no other district in which this action might otherwise be brought.

## Preliminary Statement of Facts

7.    During 1985, Donnelly authored the words and music for a song he entitled *Movin In On You* (also known as *The Dozens*) (the "Song"). Upon application by Donnelly, and as the words and music of the Song constituted copyrightable subject matter under the copyright

laws of the United States, the United States Copyright Office (the "Copyright Office") granted Certificate of Copyright Registration Number PAu 785 985 for the Song on or about December 02, 1985 (the "1985 Registration"). A copy of the 1985 Registration is attached hereto as Exhibit A.

8.      During 1988, Donnelly made a substantial investment of time, effort and expense to produce and record an album entitled *The Soul of Lefty Dizz*. As a result of these efforts and otherwise, Donnelly was the owner of all right, title and interest in and to the master sound recording(s) associated with the album (the "Album").

9.      The Album consisted of nine individual songs including *If I Could Get My Hands on You, Cloudy Weather, I Found Out, Chips Flying Everywhere, Bad Avenue, Sure Had a Wonderful Time, Woke Up This Morning, The Dozens* and *Can't Make Love Alone*.

10.     Upon application by Donnelly, and as the master sound recordings associated with the Album constituted copyrightable subject matter under the copyright laws of the United States, the Copyright Office granted Certificate of Registration Number SR 92 766 for the Album on or about June 15, 1988 (the "1988 Registration"). A copy of the 1988 Registration is attached hereto as Exhibit B.

11.     Beginning upon its completion, Donnelly made a substantial investment of time, effort and expense to promote and distribute the Album, including a launch party for the Album on July 12, 1988 at Limelight at 632 N. Dearborn Avenue in Chicago.

12.     Donnelly caused to be created and distributed approximately 1100 copies of the Album in 1988 and 1989. Of these 1100 copies, Donnelly personally gave at least 94 copies to Lefty Dizz on June 10 (27 copies), June 26 (20 copies), September 3, 1988 (21 copies) and January 24 (11 copies), June 28, 1989 (15 copies).

13.     On July 24, 2003, Donnelly (accompanied by Woody Williams) met with co-Defendant Larson in her home in Chicago, Illinois. Among the business discussed that day was the possibility of the co-Defendants licensing the Album from Donnelly.

14.     During the July 24th meeting referenced above, co-Defendant Larson acknowledged a prior familiarity with the Album by stating (in reference to the Album) "Yeah, I know it. It's the red one..." The Album had indeed been created and distributed by Donnelly with a red jacket cover/insert.

15.     During the July 24th meeting referenced above, Donnelly made it abundantly clear to co-Defendant Larson that he was the sole copyright owner of the Album and that any licensing or use of the Album by the co-Defendant(s) would have to be negotiated with him (Donnelly). Co-Defendant Larson informed Donnelly that she would consult with co-Defendants Wolf Records and Folterbauer about any interest in licensing all or a part of the Album and report back to Donnelly.

16.     After the July 24, 2003 meeting referenced above, Donnelly was never again contacted by any of the co-Defendants regarding any use of the Song or the Album by the co-Defendants.

17.     On March 3, 2005, Donnelly was informed by an individual named Jimmie Smith that the co-Defendants had released an album entitled *Chicago's Best West- and Southside Blues Singers Volume 2* ("Infringement One").

18.     Infringement One contained re-mastered sound recordings of the songs *Bad Avenue* and *I Could Get My Hands on You*, which were taken directly from the Album.

19.     On March 4, 2005 Donnelly contacted co-Defendant Larson about Infringement One and co-Defendant Larson assured Donnelly that she would help him resolve the problem.

20.     On April 4, 2007, Donnelly forwarded a letter to co-Defendants Larson and Folterbauer regarding Infringement One. A copy of the letter is attached hereto as Exhibit C.

21.     On or about June 2007, while still awaiting a response from the co-Defendants regarding Infringement One, Donnelly was again contacted by Jimmie Smith and informed that the co-Defendants had released an album entitled *Lefty Dizz, The Healer* ("Infringement Two").

22.     Infringement Two contained re-mastered sound recordings of the songs, *Woke Up This Morning, You Can't Make Love Alone, Chips Flying Everywhere, The Dozens (I'm Moving In On You), Sure Had A Wonderful Time, Cloudy Weather* and *I Found Out*, which were taken directly from the Album.

## COUNT ONE
### (Copyright Infringement-Wolf Records)

23.     Donnelly realleges and incorporates paragraphs 1-22 above.

24.     The 1988 Registration raises a statutory presumption of Donnelly's ownership of the Album, the originality of the Album, that the Album is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Album.

25.     Wolf Records, though its agents Folterbauer, Larson or otherwise, had access to the Album.

26.     Wolf Records, through its agents Folterbauer and/or Larson, released Infringement One with actual knowledge that the re-mastered sound recordings of the songs *Bad Avenue* and *I Could Get My Hands on You* were taken directly from the Album in violation of Donnelly's copyright rights therein.

## COUNT TWO
### (Copyright Infringement- Wolf Records)

27.     Donnelly realleges and incorporates paragraphs 1-26 above.

28.     The 1988 Registration raises a statutory presumption of Donnelly's ownership of the Album, the originality of the Album, that the Album is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Album.

29.     Wolf Records, though its agents Folterbauer, Larson or otherwise, had access to the Album.

30.     Wolf Records, through its agents Folterbauer and/or Larson, released Infringement Two with actual knowledge that the re-mastered sound recordings of the songs *If I Could Get My Hands on You, Cloudy Weather, I Found Out, Chips Flying Everywhere, Bad Avenue, Sure Had a Wonderful Time, Woke Up This Morning, The Dozens* and *Can't Make Love Alone* were taken directly from the Album in violation of Donnelly's copyright rights therein.

## COUNT THREE
### (Copyright Infringement- Wolf Records)

31.     Donnelly realleges and incorporates paragraphs 1-30 above.

32.     The 1985 Registration raises a statutory presumption of Donnelly's ownership of the Song, the originality of the Song, that the Song is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Song.

33.     Wolf Records, though its agents Folterbauer, Larson or otherwise, had access to the Song.

34.     Wolf Records, through its agents Folterbauer and/or Larson, released

Infringement Two with actual knowledge that the Song was owned by Donnelly, in violation of

Donnelly's copyright rights therein.

## COUNT FOUR
### (Copyright Infringement- Folterbauer)

35.     Donnelly realleges and incorporates paragraphs 1-34 above.

36.     The 1988 Registration raises a statutory presumption of Donnelly's ownership of

the Album, the originality of the Album, that the Album is within the subject matter of copyright

protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation,

registration, deposit and notice) with regard to the Album.

37.     As Wolf Records was merely an alter ego and business conduit of the governing

and dominating personality of Folterbauer, any corporate entity of Wolf Records should be

disregarded and the veil of limited liability pierced leaving Folterbauer personally liable for the

acts of infringement complained of herein.

38.     As Folterbauer was in a position of responsibility which allowed him to influence

the corporate activities of Wolf Records, as there was a nexus between his position with Wolf

Records and the acts of infringement complained of herein, as Folterbauer was able to influence

these corporate actions, and as Folterbauer's acts or omissions facilitated the acts of infringement

complained of herein, Folterbauer should be personally liable for the acts of infringement

complained of herein.

39.     Folterbauer had access to the Album.

40.     Folterbauer, through his alter ego and business conduit Wolf Records, released

Infringement One with actual knowledge that the re-mastered sound recordings of the songs *Bad*

*Avenue* and *I Could Get My Hands on You* were taken directly from the Album in violation of Donnelly's copyright rights therein.

### COUNT FIVE
### (Copyright Infringement- Folterbauer)

41.   Donnelly realleges and incorporates paragraphs 1-40 above.

42.   The 1988 Registration raises a statutory presumption of Donnelly's ownership of the Album, the originality of the Album, that the Album is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Album.

43.   As Wolf Records was merely an alter ego and business conduit of the governing and dominating personality of Folterbauer, any corporate entity of Wolf Records should be disregarded and the veil of limited liability pierced leaving Folterbauer personally liable for the acts of infringement complained of herein.

44.   As Folterbauer was in a position of responsibility which allowed him to influence the corporate activities of Wolf Records, as there was a nexus between his position with Wolf Records and the acts of infringement complained of herein, as Folterbauer was able to influence these corporate actions, and as Folterbauer's acts or omissions facilitated the acts of infringement complained of herein, Folterbauer should be personally liable for the acts of infringement complained of herein.

45.   Wolf Records, though its agents Folterbauer, Larson or otherwise, had access to the Album.

46.   Folterbauer, through his alter ego and business conduit Wolf Records, released Infringement Two with actual knowledge that the re-mastered sound recordings of the songs *If I*

*Could Get My Hands on You, Cloudy Weather, I Found Out, Chips Flying Everywhere, Bad Avenue, Sure Had a Wonderful Time, Woke Up This Morning, The Dozens* and *Can't Make Love Alone* were taken directly from the Album in violation of Donnelly's copyright rights therein.

### COUNT SIX
### (Copyright Infringement- Folterbauer)

47.    Donnelly realleges and incorporates paragraphs 1-46 above.

48.    The 1985 Registration raises a statutory presumption of Donnelly's ownership of the Song, the originality of the Song, that the Song is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Song.

49.    As Wolf Records was merely an alter ego and business conduit of the governing and dominating personality of Folterbauer, any corporate entity of Wolf Records should be disregarded and the veil of limited liability pierced leaving Folterbauer personally liable for the acts of infringement complained of herein.

50.    As Folterbauer was in a position of responsibility which allowed him to influence the corporate activities of Wolf Records, as there was a nexus between his position with Wolf Records and the acts of infringement complained of herein, as Folterbauer was able to influence these corporate actions, and as Folterbauer's acts or omissions facilitated the acts of infringement complained of herein, Folterbauer should be personally liable for the acts of infringement complained of herein.

51.    Folterbauer had access to the Song.

52.    Folterbauer, through his alter ego and business conduit Wolf Records, released Infringement Two with actual knowledge that the Song was owned by Donnelly, in violation of Donnelly's copyright rights therein.

## COUNT SEVEN
### (Copyright Infringement- Larson)

53.    Donnelly realleges and incorporates paragraphs 1-52 above.

54.    The 1988 Registration raises a statutory presumption of Donnelly's ownership of the Album, the originality of the Album, that the Album is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Album.

55.    As Wolf Records was merely an alter ego and business conduit of the governing and dominating personality of Larson, any corporate entity of Wolf Records should be disregarded and the veil of limited liability pierced leaving Larson personally liable for the acts of infringement complained of herein.

56.    As Larson was in a position of responsibility which allowed her to influence the corporate activities of Wolf Records, as there was a nexus between her position with Wolf Records and the acts of infringement complained of herein, as Larson was able to influence these corporate actions, and as Larson's acts or omissions facilitated the acts of infringement complained of herein, Larson should be personally liable for the acts of infringement complained of herein.

57.    Alternatively, Larson participated in and/or assisted in an intermediary capacity in the infringement complained of herein and is personally liable for same.

58.     Larson had access to the Album and acknowledged familiarity with same on or about July 24, 2003.

59.     Larson, through her alter ego and business conduit Wolf Records, released Infringement One with actual knowledge that the re-mastered sound recordings of the songs *Bad Avenue* and *I Could Get My Hands on You* were taken directly from the Album in violation of Donnelly's copyright rights therein.

60.     Alternatively, Larson participated in and/or assisted as in intermediary capacity with the release of Infringement One with actual knowledge that the re-mastered sound recordings of the songs *Bad Avenue* and *I Could Get My Hands on You* were taken directly from the Album in violation of Donnelly's copyright rights therein.

## COUNT EIGHT
### (Copyright Infringement- Larson)

61.     Donnelly realleges and incorporates paragraphs 1-60 above.

62.     The 1988 Registration raises a statutory presumption of Donnelly's ownership of the Album, the originality of the Album, that the Album is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Album.

63.     As Wolf Records was merely an alter ego and business conduit of the governing and dominating personality of Larson, any corporate entity of Wolf Records should be disregarded and the veil of limited liability pierced leaving Larson personally liable for the acts of infringement complained of herein.

64.     As Larson was in a position of responsibility which allowed her to influence the corporate activities of Wolf Records, as there was a nexus between her position with Wolf

Records and the acts of infringement complained of herein, as Larson was able to influence these corporate actions, and as Larson's acts or omissions facilitated the acts of infringement complained of herein, Larson should be personally liable for the acts of infringement complained of herein.

65.     Alternatively, Larson participated in and/or assisted in an intermediary capacity in the infringement complained of herein and is personally liable for same.

66.     Larson had access to the Album and acknowledged familiarity with same on or about July 24, 2003.

67.     Larson, through her alter ego and business conduit Wolf Records, released Infringement Two with actual knowledge that the re-mastered sound recordings of the songs *If I Could Get My Hands on You, Cloudy Weather, I Found Out, Chips Flying Everywhere, Bad Avenue, Sure Had a Wonderful Time, Woke Up This Morning, The Dozens* and *Can't Make Love Alone* were taken directly from the Album in violation of Donnelly's copyright rights therein.

68.     Alternatively, Larson participated in and/or assisted as in intermediary capacity with the release of Infringement Two with actual knowledge that the re-mastered sound recordings of the songs *If I Could Get My Hands on You, Cloudy Weather, I Found Out, Chips Flying Everywhere, Bad Avenue, Sure Had a Wonderful Time, Woke Up This Morning, The Dozens* and *Can't Make Love Alone* were taken directly from the Album in violation of Donnelly's copyright rights therein.

## COUNT NINE
### (Copyright Infringement- Larson)

69.     Donnelly realleges and incorporates paragraphs 1-68 above.

70.    The 1985 Registration raises a statutory presumption of Donnelly's ownership of the Song, the originality of the Song, that the Song is within the subject matter of copyright protection, and that Donnelly fully complied with all statutory formalities (e.g., fixation, registration, deposit and notice) with regard to the Song.

71.    As Wolf Records was merely an alter ego and business conduit of the governing and dominating personality of Larson, any corporate entity of Wolf Records should be disregarded and the veil of limited liability pierced leaving Larson personally liable for the acts of infringement complained of herein.

72.    As Larson was in a position of responsibility which allowed her to influence the corporate activities of Wolf Records; as there was a nexus between her position with Wolf Records and the acts of infringement complained of herein, and as Larson was able to influence these corporate actions; and as Larson's acts or omissions facilitated the acts of infringement complained of herein, Larson should be personally liable for the acts of infringement complained of herein.

73.    Alternatively, Larson participated in and/or assisted in an intermediary capacity in the infringement complained of herein and is personally liable for same.

74.    Larson had access to the Song.

75.    Larson, through her alter ego and business conduit Wolf Records, released Infringement Two with actual knowledge that the Song was owned by Donnelly, in violation of Donnelly's copyright rights therein.

76.    Larson participated in and/or assisted as in intermediary capacity with the release of Infringement Two with actual knowledge that the Song was owned by Donnelly, in violation of Donnelly's copyright rights therein.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Kevin M. Donnelly prays this Court to grant relief against co-Defendants Wolf Records, Folterbauer and Larson, jointly and severally, as follows:

a)      That co-Defendants Wolf Records, Folterbauer and Larson, their agents, employees, successors, assigns, distributors, and any and all other persons or entities acting in concert with or affiliated with them, be permanently enjoined and restrained from copying, reproducing, manufacturing, duplicating, disseminating, distributing, or otherwise using any portion of the Album, namely any actual or derivative sound recordings of the songs *Bad Avenue*, *I Could Get My Hands on You*, *Cloudy Weather*, *I Found Out*, *Chips Flying Everywhere*, *Sure Had a Wonderful Time*, *Woke Up This Morning*, *The Dozens* and *Can't Make Love Alone*;

b)      That co-Defendants Wolf Records, Folterbauer and Larson, their agents, employees, successors, assigns, distributors, and any and all other persons or entities acting in concert with or affiliated with them, be permanently enjoined and restrained from copying, reproducing, manufacturing, duplicating, disseminating, distributing, or otherwise using any portion of the Song;

c)      That any and all copies of Infringement One using any portion of the Album, namely any actual or derivative sound recordings of the songs *Bad Avenue* and *I Could Get My Hands on You*, as well as any masters, tapes or other means by which such copies may be reproduced, be impounded, destroyed or otherwise disposed of as this Court deems reasonable;

d)      That any and all copies of Infringement Two using any portion of the Album, namely any actual or derivative sound recordings of the songs *If I Could Get My Hands on You*,

*Cloudy Weather*, *I Found Out*, *Chips Flying Everywhere*, *Bad Avenue*, *Sure Had a Wonderful Time*, *Woke Up This Morning*, *The Dozens* and *Can't Make Love Alone*, as well as any masters, tapes or other means by which such copies may be reproduced, be impounded, destroyed or otherwise disposed of as this Court deems reasonable;

e)      That any and all copies of Infringement Two using any portion of the Song, as well as any masters, tapes or other means by which such copies may be reproduced, be impounded, destroyed or otherwise disposed of as this Court deems reasonable;

f)      That co-Defendants Wolf Records, Folterbauer and Larson be ordered to file, within 30 days of the issuance of the injunction and/or order of impoundment requested above, a sworn report setting forth in detail the manner in which they have complied with the injunction and/or order of impoundment;

g)      That co-Defendants Wolf Records, Folterbauer and Larson be ordered to conduct an accounting of all United States and worldwide sales and profits derived from making, using, marketing or in any way selling any portion of the Album or the Song, including but without limitation through Infringement One and Infringement Two;

h)      That Donnelly be awarded its actual damages or, in the alternative, its statutory damages for willful infringement in the amount of $150,000 (USD) per violation, or $450,000 in the aggregate (USD); and

i)      That Donnelly be awarded his full attorney's fees, costs, and any further relief the court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands jury trial on all issues so triable.

Respectfully Submitted,

By: _Scott A A_____
       Attorney for Plaintiff

Scott A. Andresen, Esq.
(Illinois ARDC No. 6269335)

**ANDRESEN & ASSOCIATES, P.C.**
655 West Irving Park
Suite 3812
Chicago, Illinois 60613
Telephone: (773) 572-6049
Facsimile: (773) 572-6048

**EXHIBIT A**

CERTIFICATE OF COPYRIGHT REGISTRATION

UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*(signature)*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

REGISTRATION NUMBER

PAU 785 985

PA       PAU

EFFECTIVE DATE OF REGISTRATION

DEC 02 1985

(Month)      (Day)      (Year)

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

---

**① Title**

TITLE OF THIS WORK: MOVIN IN ON YOU

NATURE OF THIS WORK: (See instructions)  WORDS AND MUSIC

PREVIOUS OR ALTERNATIVE TITLES: THE DOZENS

---

**② Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1
NAME OF AUTHOR: KEVIN MICHAEL DONNELLY

Was this author's contribution to the work a "work made for hire"? Yes...... No X

DATES OF BIRTH AND DEATH:
Born 1953 Died ....
(Year)      (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of UNITED STATES } or { Domiciled in ..........
(Name of Country)      (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?     Yes......  No. X
Pseudonymous?  Yes...... No. X
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution) WORDS AND MUSICAL ACCOMPANIMENT

2
NAME OF AUTHOR:

Was this author's contribution to the work a "work made for hire"? Yes...... No. ...

DATES OF BIRTH AND DEATH:
Born .... Died ....
(Year)      (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ........ } or { Domiciled in ..........
(Name of Country)      (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?     Yes......  No. ....
Pseudonymous?  Yes...... No. ....
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

3
NAME OF AUTHOR:

Was this author's contribution to the work a "work made for hire"? Yes...... No. ...

DATES OF BIRTH AND DEATH:
Born .... Died ....
(Year)      (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ........ } or { Domiciled in ..........
(Name of Country)      (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?     Yes......  No. ....
Pseudonymous?  Yes...... No. ....
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

---

**③ Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year... 1985
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date. .... (Month) (Day) (Year)
Nation. .... (Name of Country)
(Complete this block ONLY if this work has been published.)

---

**④ Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
KEVIN M. DONNELLY
1626 W HIGHLAND
CHICAGO, ILLINOIS   60660

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

---

* Complete all applicable spaces (numbers 5-9) on the reverse side of this page
* Follow detailed instructions attached   * Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ....... pages

PAu  785 985

| EXAMINED BY | | APPLICATION RECEIVED: |
|---|---|---|
| CHECKED BY | | DEC 02 1985 |
| CORRESPONDENCE: ☐ Yes | DEPOSIT RECEIVED: DEC 02 1985 | FOR COPYRIGHT OFFICE USE ONLY |
| DEPOSIT ACCOUNT FUNDS USED: ☐ | REMITTANCE NUMBER AND DATE: | |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET ( FORM PA/CON)**

**PREVIOUS REGISTRATION:**

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?  Yes . . . . . . . . .  No . X . . . .

- If your answer is "Yes," why is another registration being sought?  (Check appropriate box)

  ☐ This is the first published edition of a work previously registered in unpublished form.
  ☐ This is the first application submitted by this author as copyright claimant.
  ☐ This is a changed version of the work, as shown by line 6 of the application.

- If your answer is "Yes," give:  Previous Registration Number . . . . . . . . . . . . . . . . . .  Year of Registration . . . . . . . . . . . . . . . . . . . .

**(5) Previous Registration**

---

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

MATERIAL ADDED TO THIS WORK. (Give a brief general statement of the material that has been added to this work and in which copyright is claimed.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(6) Compilation or Derivative Work**

---

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Account Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: KEVIN DONNELLY . . . . . . . . . . . . . .
Address: 1626 W HIGHLAND    3W . . . . . (Apt.)
CHICAGO    ILLINOIS    60660
(City)    (State)    (ZIP)

**(7) Fee and Correspondence**

---

**CERTIFICATION:** ✱ I, the undersigned, hereby certify that I am the: (Check one)

☒ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☐ authorized agent of: . . . . . . . . . . . . . . . . . . . . .
(Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X)  Kevin M. Donnelly

Typed or printed name KEVIN M. DONNELLY . . . . . Date 11-7-85

**(8) Certification (Application must be signed)**

---

MAIL CERTIFICATE TO

KEVIN DONNELLY . . . . . . . . . . . . . . . . . . .
(Name)
1626 W. HIGHLAND    3-W
(Number, Street and Apartment Number)
CHICAGO    ILLINOIS    60660
(City)    (State)    (ZIP code)

(Certificate will be mailed in window envelope)

**(9) Address For Return of Certificate**

---

✱ 17 U.S.C. §506(e): FALSE REPRESENTATION—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆ U.S. GOVERNMENT PRINTING OFFICE: 1978-261-022/17

# CERTIFICATE OF COPYRIGHT REGISTRATION





EXHIBIT **B**

**FORM SR**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

**REGISTER OF COPYRIGHTS**
*United States of America*

OFFICIAL SEAL

SR / 92 766

SR            SRU

EFFECTIVE DATE OF REGISTRATION

6 / 15 / 88
Month / Day / Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1
**TITLE OF THIS WORK ▼**
THE SOUL OF LEFTY DIZZ

**PREVIOUS OR ALTERNATIVE TITLES ▼**

## 2
**NATURE OF MATERIAL RECORDED ▼** See instructions
- ☒ Musical
- ☐ Musical-Dramatic
- ☐ Dramatic
- ☐ Literary
- ☐ Other

**NAME OF AUTHOR ▼**
a KEVIN DONNELLY (D.B.A "CATWALK RECORDS")

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1953    Year Died ▼

Was this contribution to the work a "work made for hire"?
- ☐ Yes
- ☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ UNITED STATES
Domiciled in ▶ UNITED STATES

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law...

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
SOUND RECORDING

**NAME OF AUTHOR ▼**
b

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
- ☐ Yes
- ☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**
c

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
- ☐ Yes
- ☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼



## 3
**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1988 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ JUNE  Day ▶ 10  Year ▶ 1988
UNITED STATES ◀ Nation

## 4
**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
KEVIN M. DONNELLY (D.B.A. "CATWALK RECORDS")
1626 W. HIGHLAND #3
CHICAGO, IL 60660

See instructions before completing this space

APPLICATION RECEIVED
JUN. 15. 1988
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUN 15 1988
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page. • See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE

FORM SR

EXAMINED BY

CHECKED BY

SR    92 766

☐ CORRESPONDENCE
   Yes

☐ DEPOSIT ACCOUNT
   FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION**   Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**   Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a.   **Preexisting Material**   Identify any preexisting work or works that this work is based on or incorporates. ▼

b.   **Material Added to This Work**   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT**   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼                                                    **Account Number** ▼

**7**

**CORRESPONDENCE**   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

KEVIN M DONNELLY — CATWALK RECORDS
1626 W HIGHLAND #3
CHICAGO, IL 60660

Area Code & Telephone Number ▶ (312) 973-4999

Be sure to
give your
daytime phone
◀ number.

**CERTIFICATION\***   I, the undersigned, hereby certify that I am the

Check one ▼

☑ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☐ authorized agent of _____
                    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

KEVIN  M.  DONNELLY                    date ▶ 6-13-88

Handwritten signature (X) ▼

Kevin M. Donnelly

**MAIL
CERTIFI-
CATE TO**

Name ▼
KEVIN  DONNELLY

Number/Street/Apartment Number ▼
1626  W.  HIGHLAND  #3

**Certificate
will be
mailed in
window
envelope**

City/State/ZIP ▼
CHICAGO,  IL  60660

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?

MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559

**9**

\* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

U.S. GOVERNMENT PRINTING OFFICE: 1987—181—531/50,005

Kevin M. Donnelly
5415 N. Sheridan Road #5215
Chicago, IL 60640



April 4, 2007

Joanne Larson, dba Wolf Records USA
P.O. Box 6066
Chicago, IL 60680-6066
fax-(312)492-6142

Joanne,

I am forced to write you because my numerous past attempts to discuss the following matter with you have all ended with your unkept assurances that you would call me back with some remedy.

On July 24, 2003, I accompanied Woody Williams to your home for a scheduled meeting. Among the business discussed that day was a recording I had produced, _The Soul of Lefty Dizz_, copyright 1988. You told us you had a copy of it, saying, "Yeah, I know it, it's the red one." Indeed, the recording had been released in a red cassette. I asked you then if Wolf records would be interested in releasing it, going so far as to offer to liscence it with no cash advance. You told me you would consult with Hannes and call me back.

On March 3, 2005 I was informed by Jimmie ~~Sith,~~ Smith, who performed on the recordings, that two of the songs from _The Soul of Lefty Dizz_ were included on the Wolf records release, _Chicago's Best West and Southside Blues Singers_. I called you the next day. You told me you could "help" me with this, that you needed to confer with Hannes, and that I should call you back in a week. My calls after that went mostly unanswered and unreturned. When I was able to reach you, more than once you told me you had a proposal to make and would call me back when you had time to go over it. but you never did.

You have knowingly and deliberately pirated my copyright protected property. This is a Federal violation. The office of my Congressman advised me that it is a criminal as well as a civil violation and urged me to report this to the Federal authorities, which I have.

I demand that you cease and desist from copying, distributing or selling any further copies of _Chicago's Best West and Southside Blues Singers, Vol. 2_, or any other products containing the Lefty Dizz recordings which are my sole and exclusive property, and that you compensate me for the damages you have already caused me.

Four months after the death of Lefty's employer, Hound Dog Taylor, I joined Lefty at his second ever appearance at the Kingston Mines. I was in the band when we started the Blue Monday at the Checkerboard, when Sylvia Emby joined us on bass, when we played the Bi-Centenniall Festival in Washington, D.C. I was in the band when Tampa Red came to sit in, when the Rolling Stones came to jam. I was in the band when the Lefty Dizz Shock Treatment came into being!

After leaving the band, I became one of only three people ever to produce and release an album of Lefty Dizz as a band leader. While he was living, I invested and lost thousands of dollars recording Lefty Dizz.

That you would not only steal this from me, but 'de-fame' me professionally by removing my name from my work as Lefty's producer is even more deeply offensive because I know you.

This letter requires a response. I do not intend to let this go unresolved.

Sincerely,

Kevin Donnelly
(773)769-4841

cc: Woody Williams
    Hannes Foltzbauer